IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KATHRYN LASK,

        Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　Case No. 23-2074-JWB

KANSAS CITY, KANSAS COMMUNITY
COLLEGE BOARD OF TRUSTEES, *also
known as* KCKCC,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to dismiss. (Doc. 6.) The motion is fully briefed and is ripe for decision. (Docs. 7, 9, 10.) For the reasons stated herein, the motion to dismiss is GRANTED IN PART and DENIED IN PART.

**I. Background and Facts**

Defendant is the Board of Trustees for Kansas City, Kansas Community College (KCKCC), which is a public community college organized under the laws of Kansas and receives federal funds. (Doc. 1 at 1.) KCKCC is an employer within the meaning of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA). Plaintiff is employed by Defendant as a full-time faculty member. Plaintiff's complaint, highly summarized, alleges that Plaintiff was subjected to greater scrutiny by Defendant than other faculty members and to various adverse conditions of employment on account of her sex, age, and disability. The claims listed in the complaint are: Count I – discrimination in the terms and conditions of employment on account of sex in violation of Title VII; Count II – sex discrimination in the form of a hostile work

environment in violation of Title VII; Count III – retaliation for complaining of sex discrimination in violation of Title VII; Count IV – discrimination on account of age in violation of the ADEA, 29 U.S.C. § 621; Count V - sex discrimination in the form of a hostile educational environment in violation of Title IX, 20 U.S.C. § 1681; Count VI – retaliation for complaining of sex discrimination in violation of Title IX; and Count VII – retaliation for filing a complaint of discrimination in violation of Title IX.[1] (Doc. 1.)  Plaintiff seeks, as to all counts, actual damages (including for emotional distress), punitive damages, injunctive relief, and attorney's fees and other expenses.

Defendant's motion to dismiss asserts the following arguments. First, it seeks judgment on Plaintiff's request for punitive damages by arguing such damages are not recoverable against a governmental entity such as KCKCC and, besides, are not available under Title IX or the ADEA. Second, it contends Plaintiff's claim for emotional distress damages under Title IX and the ADEA should be dismissed because such damages are not recoverable under these statutes. Third, Defendant argues Plaintiff failed to exhaust administrative remedies on her Title VII and ADEA claims. Lastly, Defendant moves for dismissal insofar as the complaint seeks injunctive relief because Plaintiff fails to specify the relief sought.

## II. Standard

In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v.*

---

[1] In preliminary sections the complaint also asserts: "Plaintiff alleges that KCKCC has violated Title I and Title V of the Americans with Disabilities Act," and "[t]his is also an action to redress deprivation of Plaintiff's Constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983," (Doc. 1 at 2, 4) but neither of these purported claims is supported by any factual allegations or listed in the enumerated counts of the complaint.

2

*Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla*., 510 F.3d 1196, 1200 (10th Cir. 2007).

**III. Analysis**

**A. Punitive damages**. Plaintiff initially concedes punitive damages are not available on her ADEA claim. (Doc. 9 at 1.) The motion to dismiss is accordingly granted as uncontested to the extent the complaint seeks punitive damages on the ADEA claim.

Defendant contends that "punitive damages may not be recovered against a governmental entity such as Defendant" and furthermore that they are not recoverable at all under Title IX. (Doc. 7 at 3. As an initial matter, the court agrees with Defendant that punitive damages are not available on Plaintiff's Title IX claims by virtue of *Cummings v. Premier Rehab Keller, P.L.L.C*., 142 S. Ct. 1562 (2022) and similar cases. Title IX places various conditions upon recipients who agree to take federal funds and was passed pursuant to Congress's authority under the Spending Clause. *See* U.S. CONST., art. I § 8, cl. 1 ("The Congress shall have Power … to … provide for the … general Welfare of the United States."); *Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274, 287 (1998) ("Title IX's contractual nature has implications for our construction of the scope of available remedies. When Congress attaches conditions to the award of federal funds under its spending power, U.S. Const., Art. I, § 8, cl. 1, as it has in Title IX and Title VI, we examine closely the propriety of private actions holding the recipient liable in monetary damages for noncompliance with the condition.") "The express means of enforcement is administrative: The statute directs federal agencies that distribute education funding to establish requirements to effectuate the nondiscrimination mandate, and permits the agencies to enforce those requirements

through 'any … means authorized by law,' including ultimately the termination of federal funding." *Gebser,* 524 U.S. at 28-081. In *Cummings* the Supreme Court reiterated the contractual nature of laws passed pursuant to the Spending Clause and made clear this fact limits the scope of conduct for which fund recipients may be liable for violating the law as well as the scope of available remedies. A particular remedy is appropriate only if the recipient is on notice that by accepting federal funding it exposes itself to liability of that nature. *Cummings*, 142 S. Ct. at 1570 (citing *Barnes v. Gorman*, 536 U.S. 181, 187-88 (2002) and *Gebser*, 524 U.S. at 287). Under such Spending Clause anti-discrimination laws, private individuals may obtain monetary and injunctive relief, but "[p]unitive damages … are not available." *Id.* at 1568 (citing *Barnes*, 536 U.S. at 189) (punitive damages not available in private action under the ADA or the Rehabilitation Act). *Cf. Clark v. Newman Univ., Inc.*, No. CV 19-1033-KHV, 2022 WL 4130828, at *11 (D. Kan. Sept. 12, 2022) ("Neither the Tenth Circuit nor the United States Supreme Court have addressed whether a plaintiff may recover punitive damages under Title IX. Even so, the Court predicts that the Tenth Circuit would follow the reasoning of other courts, which have held that because Title VI of the Civil Rights Act of 1964 does not permit recovery of punitive damages, the same rule should apply under Title IX."); *Mercer v. Duke Univ.*, 50 F. App'x 643, 644 (4th Cir. 2002) ("Thus, the Supreme Court's conclusion in *Barnes* that punitive damages are not available under Title VI compels the conclusion that punitive damages are not available for private actions brought to enforce Title IX.") The court accordingly finds punitive damages are not available on Plaintiff's Title IX claims.

Additionally, the court concludes Plaintiff may not recover punitive damages on her Title VII claims because 28 U.S.C. § 1981a(b)(1) prohibits recovery of punitive damages in a Title VII suit against "a government, government agency or political subdivision…." Defendant falls within the latter category. As Plaintiff notes, the Kansas Tort Claims Act defines a "municipality" to

4

include a "school district or other political or taxing subdivision of the state…." K.S.A. 75-6102(b). Defendant board of trustees is responsible for the operation and management of a community college, with board members elected by local election.  K.S.A. 71-201(a); K.S.A. 71-1403. The board has a broad array of powers including the power of eminent domain and the power "to levy a tax on the taxable tangible property of the community college district" to help finance the community college budget. K.S.A. 71-201(a) & 71-204(a). These characteristics render Defendant a taxing or political subdivision of the state. In *Bland v. Kansas City, Kansas Community College*, 271 F. Supp.2d 1280 (D. Kan. 2003), the court rejected Defendant's claim of Eleventh Amendment immunity (available to States but not to political subdivisions such as counties or municipalities) and found, after surveying Kansas law, that Defendant was a municipality under the KTCA. "[T]o the extent community colleges have been characterized by Kansas state law, they have been characterized as municipalities rather than arms of the state." *Id.* at 1287. The court noted, among other things, the authority of a community college board of trustees to issue general obligation bonds and to impose taxes, the latter being a "characteristic attribute of political subdivisions." *Id.* at 1290 (citation omitted.)

Plaintiff contends Defendant is not a municipality, arguing there is a distinction between a community college and its board of trustees. (Doc. 9 at 4.) But the asserted distinction is unpersuasive, as the board is vested with governmental powers that characterize it as a municipal entity and that also bring it within the exemption from punitive damages in § 1981a. *Cf. Bland*, 271 F. Supp. 2d at 1288 ("Here, defendant is far more closely analogous to the local school boards in *Ambus*, being governed by a board comprised of locally elected members, than it is to the University of Utah's governing board of regents in *Watson*. In short, the fact that defendant is

5

governed by a locally elected board of trustees weighs strongly in favor of political subdivision status.")

Plaintiff also argues that the doctrine of judicial estoppel should preclude Defendant from claiming to be a governmental entity or claiming "that Defendant Board and KCKCC are one in the same" for purposes of punitive damages. (Doc. 9 at 4.) Plaintiff argues this is so because in a prior case Defendant claimed that a plaintiff who named the KCKCC as the respondent on an EEOC complaint, but not the board of trustees, failed to satisfy the Title VII exhaustion requirement with respect to the board. (*Id.*) (citing *Abouelenein v. Kansas City Kansas Cmty. Coll.*, No. 18-2670-DDC-JPO, 2020 WL 1528500, at *6 (D. Kan. Mar. 31, 2020)). The court finds judicial estoppel does not apply here.  *See Finch v. Rapp*, No. 18-1018-JWB, 2022 WL 16571176, at *2 (D. Kan. Nov. 1, 2022) (discussing elements of judicial estoppel). Defendant's position that it is a governmental entity is not "clearly inconsistent" with its prior exhaustion argument in *Abouelenein*.  Nor has any court been misled by the argument or has Defendant gained some unfair advantage from these assertions. The court notes that the *Abouelenein* court rejected Defendant's exhaustion argument as a basis for dismissal of the complaint. (*Abouelenein*, 2020 WL 1528500, at *9.) In sum, Defendant's motion to dismiss the claim for punitive damages is granted.

**B. Emotional distress damages**. Defendant also seeks dismissal of any claim for emotional distress damages on Plaintiff's Title IX and ADEA claims. (Doc. 7 at 4.) Plaintiff's response addresses only Title IX, leading the court to conclude that Plaintiff waives the argument and concedes she may not recover emotional distress damages with respect to her ADEA claim. As for Title IX, Plaintiff argues emotional distress damages are available because that act was passed by Congress not only pursuant to its Spending Clause authority, but also, she contends, pursuant to its powers under the Equal Protection Clause and Section 5 of the Fourteenth

Amendment. Section 5 gives Congress the power "to enforce, by appropriate legislation," the Equal Protection guarantee of the Fourteenth Amendment. U.S. CONST. amend. XIV, § 5.

Assuming Congress could enforce the Equal Protection guarantee of the Fourteenth Amendment by authorizing recovery of emotional distress damages for a violation of Title IX, there is no showing that Congress in fact did so through the language of Title IX. Title IX provides in part that "[n]o person. … shall, on the basis of sex, … be subjected to discrimination under any education program … receiving Federal financial assistance…." 20 U.S.C. § 1681(a). In *Cannon v. Univ. of Chicago*, 441 U.S. 677, 709 (1979), the Supreme Court held this provision was enforceable through an implied right of action. In *Cummings*, the Court noted that "[i]n *Franklin* [*v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 76 (1992)], we considered whether monetary damages are available as a remedy for intentional violations of Title IX …." *Cummings*, 142 S.Ct. at 1570. "We answered yes, … but 'did not describe the scope of 'appropriate relief.'" *Id.* (citation omitted.) The Court observed:

> Our later cases have filled in that gap, clarifying that our consideration of whether a remedy qualifies as appropriate relief must be informed by the way Spending Clause "statutes operate": by "conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 286, 118 S. Ct. 1989, 141 L.Ed.2d 277 (1998). Unlike ordinary legislation, which "imposes congressional policy" on regulated parties "involuntarily," Spending Clause legislation operates based on consent: "in return for federal funds, the [recipients] agree to comply with federally imposed conditions." *Pennhurst*, 451 U.S. at 16, 17, 101 S. Ct. 1531. For that reason, the "legitimacy of Congress' power" to enact Spending Clause legislation rests not on its sovereign authority to enact binding laws, but on "whether the [recipient] voluntarily and knowingly accepts the terms of th[at] 'contract.'" *Barnes*, 536 U.S. at 186, 122 S. Ct. 2097 (quoting *Pennhurst*, 451 U.S. at 17, 101 S. Ct. 1531).

*Cummings*, 142 S. Ct. at 1570.

"A particular remedy is thus 'appropriate relief' in a private Spending Clause action 'only if the funding recipient is on notice that, by accepting federal funding, it exposes itself to liability

7

of that nature.'" *Id.* (quoting *Barnes*, 536 U.S. at 187.) When a Spending Clause statute is silent as to available remedies, the contractual nature of receiving federal funds puts a recipient on notice that it is subject to "those remedies traditionally available in suits for breach of contract," including compensatory damages. *Id.* at 1571. Using this framework, *Cummings* found emotional distress damages were not available under the two Spending Clause statutes it examined (the Rehabilitation Act and the Affordable Care Act):

> In order to decide whether emotional distress damages are available under the Spending Clause statutes we consider here, we therefore ask a simple question: Would a prospective funding recipient, at the time it "engaged in the process of deciding whether [to] accept" federal dollars, have been aware that it would face such liability? [citation omitted.] If yes, then emotional distress damages are available; if no, they are not.

*Id.* at 1570-71. Despite the fact that "intentional discrimination is frequently a wanton, reprehensible tort," the Court found that neither punitive damages nor emotional distress damages are traditionally available in contract cases, and so federal fund recipients would not have clear notice that such damages would be available when they are deciding whether to accept federal funds. *Id.* at 1573-74. *Cummings* rejected an argument that emotional distress damages should be allowed because they are available in exceptional contract cases. The Court said this approach "would have us treat statutory silence as a license to freely supply remedies we cannot be sure Congress would have chosen to make available," and was contrary to the requirement that a federal fund recipient have "clear notice regarding the liability at issue." *Id.* at 1574 (citation omitted).

Plaintiff's argument otherwise is unpersuasive because Title IX contains no language showing that Congress intended to authorize recovery of emotional distress damages for a violation of the act. Absent such language, Congress's authority to enforce the Fourteenth Amendment "through appropriate legislation" cannot justify implying an emotional damages remedy in Title IX. *Cf. Cannon*, 441 U.S. at 708-09 ("[I]t is the expenditure of federal funds that provides the

8

justification for this particular statutory prohibition [*i.e.*, the anti-discrimination provision of Title IX]."); *Barnes*, 536 U.S. at 187 ("Thus we have held that under Title IX, which contains no express remedies, a recipient of federal funds is nevertheless subject to suit for compensatory damages, … and injunction, … forms of relief traditionally available in suits for breach of contract.") The Supreme Court has clearly rejected emotional distress damages in comparable statutes based on the Spending Clause, and that reasoning applies with equal force to Plaintiff's claims under Title IX. *Cf. Cannon*, 142 S. Ct. at 1569-70 (identifying Title VI and Title IX among the Spending Clause discrimination statutes as to which a contractual-damages type remedy may be implied). Defendant's motion to dismiss Plaintiff's claim for emotional distress damages on her Title IX claims is accordingly granted. *See Abdulsalam v. Bd. of Regents of Univ. of Nebraska*, No. 4:22-CV-3004, 2023 WL 4266378, at *4 (D. Neb. June 29, 2023) ("Having considered the Supreme Court's decision in *Cummings*, this Court joins the majority of courts that have weighed in on the issue and concludes that damages for emotional distress are not recoverable in suits brought under Title IX.")

**C. Exhaustion**. Defendant contends Counts I-IV of the complaint should be dismissed for failure to exhaust administrative remedies. Defendant concedes Plaintiff timely filed a charge with the EEOC that included the allegations relating to Counts I-IV, but argues exhaustion was not satisfied because "Plaintiff did not sign, verify or otherwise attest to the facts" set forth in the charge. (Doc. 7 at 6.) In response, Plaintiff asserts that she properly exhausted administrative remedies because her attorney signed and verified the charge on her behalf. (Doc. 9 at 13.)  For the reasons discussed below, the court is not persuaded that this alleged defect warrants dismissal.

Whenever a charge is filed "by or on behalf of a person" claiming to be aggrieved by unlawful discrimination under Title VII or the ADEA, the EEOC is required to serve notice of the

9

charge on the employer and to make an investigation of the matter. 42 U.S.C. § 2000e-5(b). Charges must "be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." *Id.* Regulations adopted by the EEOC provide that a charge "may be made by or on behalf of any person claiming to be aggrieved," and if made on behalf of a person "may be made by any person, agency, or organization." 29 C.F.R. § 1601.7(a). The "written charge need not identify by name the person on whose behalf it is made," although the person making the charge must provide the commission with the name and contact information of the person on whose behalf the charge is made.[2] Regulations provide that "[a] charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. The term verified means "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3. A charge "may be amended to cure technical defects or omissions, including failure to verify the charge," and charges so amended "relate back to the date the charge was first filed." 29 C.F.R. § 1601.12(b).

Plaintiff attached a copy of her EEOC charge, dated July 6, 2022, to her complaint. (Doc. 1-1.) The first page is an EEOC form that includes a box with a signature line for the "Charging Party Signature," which appears beneath the statement, "I declare under penalty of perjury that the above is true and correct." (*Id.* at 1.) That line was signed and dated by Plaintiff's attorney. Stamped just above the signature in bold red letters is the statement: "Attorney for Kathryn Lask." (*Id.*) Another box with a signature line for "Complainant," which appeared under a pre-printed statement swearing that the charge is true, was similarly signed by Plaintiff's attorney and was accompanied by a second red stamped message stating: "Attorney for Kathryn Lask." (*Id.*)  A 12-

---

[2] "During the Commission investigation, Commission personnel shall verify the authorization of such charge by the person on whose behalf the charge is made." 29 C.F.R. § 1601.7(a).

10

page exhibit, which was referenced on the first page of the form and was attached to it, alleged extensive facts in support of the charge. The names of Plaintiff's attorneys at the end of the exhibit indicate it was written by the attorneys. (*Id.* at 12-13.)

Defendant contends the charge must be verified by Plaintiff rather than by her attorney. (Doc. 10 at 5.) But the language of the statute and the regulations noted above requires only that a charge be under oath or verified, and Defendant cites no Tenth Circuit authority for the proposition that the charge can only be verified by the complainant. In this instance, Plaintiff's attorney verified the allegations, representing under penalty of perjury that the charge was true and correct. (Doc. 1-1 at 1.) That act met the literal requirements of 42 U.S.C. § 2000e-5(b) and 29 C.F.R. § 1601.9. *Cf. Butler v. Greif, Inc.*, 325 F. App'x 748, 749 (11th Cir. 2009) ("While an attorney may file an EEOC charge on behalf of a client, the attorney's signature alone will not constitute verification if the attorney does not personally swear to the truth of the facts stated in the charge and does not have personal knowledge of those facts."); *Buck v. Hampton Tp. Shc. Dist.*, 452 F.3d 256, 260-61 (3d Cir. 2006) (although attorney signed the charge, the signature was not under penalty of perjury as required by the regulations). Defendant has thus not shown it is entitled to dismissal of the complaint for lack of exhaustion. Moreover, even if the attorney's signature was not sufficient in this instance to satisfy exhaustion requirements, on this record the court would still not grant Defendant's motion to dismiss. The failure to properly verify an EEOC charge does not deprive a court of jurisdiction to decide the merits of the claim. *See Buck*, 452 F.3d at 262 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982)). Rather, it is a procedural failure that is "subject to waiver 'when equity so requires.'" *Id.* at 263 (citation omitted.) As indicated in *Buck*, the Supreme Court upheld an EEOC regulation allowing a verification to relate back to the filing of the charge with the following observations:

11

> Construing § 706 to permit the relation back of an oath omitted from an original filing ensures that the lay complainant, who may not know enough to verify on filing, will not risk forfeiting his rights inadvertently. At the same time, the EEOC looks out for the employer's interest by refusing to call for any response to an otherwise sufficient complaint until the verification has been supplied.

*Edelman v. Lynchburg Coll.*, 535 U.S. 106, 115 (2002). In *Buck*, the court found an employer waived objection to the lack of verification by responding to the charge without raising the issue before the EEOC issued a right-to-sue letter. *Buck* observed that Title VII and the verification requirement "should be interpreted to 'ensure[] that the lay complainant … will not risk forfeiting his rights inadvertently.'" *Buck*, 452 F.3d at 264 (citing *Edelman*, 535 U.S. at 115). The court noted that regulations allow a complainant to cure the "technical defect" of a failure to verify after-the-fact, but the EEOC's issuance of a right-to-sue letter cuts off that ability by ending the administrative process. *Buck* found that the employer waived the verification issue where it had a copy of the charge but responded to the claims on the merits instead of raising the lack of verification before the EEOC. *Id*. at 256 ("[W]e hold that where, as here, an employer has actual notice of a discrimination charge and chooses to respond to the merits of the claim before the EEOC without asserting lack of verification as a defense it waives its right to secure dismissal of the federal court proceedings on that basis.") It is not clear from the current record in the instant case whether Defendant was or should have been aware of the alleged failure to verify the charge prior to the EEOC's issuance of the right-to-sue letter. Inasmuch as a defense of waiver is plausible on the current record, however, the court finds that Defendant's motion to dismiss the complaint for lack of exhaustion should be denied.

**D. Injunctive Relief**. Defendant contends it is entitled to dismissal insofar as the complaint seeks injunctive relief because the requested relief is not specified and no facts showing an entitlement to injunctive relief are alleged. The court concludes the motion to dismiss should be denied. As Plaintiff points out, the federal statutes under which she seeks relief authorize a range

of equitable relief if unlawful discrimination is proven. For example, "[i]njunctive relief in Title VII cases is authorized when the court finds that the defendant 'has intentionally engaged in or is intentionally engaging in an unlawful employment practice....'" *Roe v. Cheyenne Mountain Conf. Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997) (quoting 42 U.S.C. § 2000e–5(g)). "[T]he court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay … or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g)). Plaintiff has alleged such discrimination and alleges that it is ongoing. (*See e.g.*, Doc. 1 at 32) (alleging ongoing sex discrimination). Under the circumstances, Defendant has not shown it is entitled to dismissal of the request for injunctive relief.

**IV. Conclusion**

Defendant's motion to dismiss (Doc. 6) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to Plaintiff's claim for punitive damages and on the claim for emotional distress damages under Title IX and the ADEA; the motion is otherwise DENIED. IT IS SO ORDERED this 8th day of August, 2023.

s/ John Broomes

JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE